UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEUTSCH,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS W. COOK,<br><br>    Defendant. | No. 1:19-cv-00281-DAD-SAB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 13) |

**INTRODUCTION**

On May 10, 2019, defendant Douglas W. Cook filed a motion to dismiss plaintiff Michael Deutsch's complaint. (Doc. 13-1.) On June 4, 2019, plaintiff filed his opposition. (Doc. No. 16.) On June 11, 2019, defendant filed his reply. (Doc. No. 17.) A hearing on the motion was held on June 18, 2019. Attorney Julia Wittman appeared telephonically on behalf of plaintiff, and attorneys Shane Smith and Paul Gaus appeared on behalf of defendant.

The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, the court grants defendant's motion to dismiss with leave to amend.

**BACKGROUND**

**A.    The Venture**

This dispute arises from a business venture of sorts that was never formalized in writing. In his complaint, plaintiff alleges as follows. Defendant Cook is a medical doctor and surgeon

1

who invented the Dialfan, a medical device used in hernia repairs, in or about 2010. (Doc. No. 1 ¶¶ 1, 15.) The Dialfan consists of a mesh patch and a placement tool "with a plurality of adjustable blades and a control to move the adjustable blades between a clustered position," allowing "the blades to be inserted in an opening in a ply of the mesh patch and an expanded position to spread the mesh patch out in a planar fashion." (*Id.* ¶ 16.) "Cook patented the Dialfan and, on information and belief, directly owns all right, title, and interest in the Dialfan technology." (*Id.* ¶ 17.) Plaintiff Deutsch alleges that he paid attorneys' fees for the Dialfan's patent. (*Id.* ¶ 4.)

In late 2010, "Cook approached Deutsch for help with commercializing the device, knowing that Deutsch had achieved considerable success marketing and selling related medical devices." (*Id.* ¶¶ 2, 18.) "Cook wanted Deutsch to use his connections and experience in the medical device industry so Cook, through Deutsch, could either market the device or find a company to produce and sell the Dialfan under a licensing agreement with Cook in exchange for paying Cook royalties on Dialfan sales." (*Id.* ¶ 18.) "Cook also wanted Deutsch to contribute money to promote the commercialization of the Dialfan." (*Id.*) "In exchange," Cook "promis[ed] to reward Deutsch if they succeeded by sharing with Deutsch 49% of the profit Cook earned on any sales." (*Id.* ¶¶ 3, 18.)

"Deutsch agreed to work with Cook to commercialize the device," but the parties "never entered a partnership agreement, joint venture agreement, or any other contract governing their efforts to bring the Dialfan to market (the 'Venture')." (*Id.* ¶¶ 3, 19.) At the beginning of the Venture, the parties "did not agree upon a termination date nor did they set performance metrics or deadlines for achieving sales goals." (*Id.* ¶ 20.)

**B. The Acts Supporting the Venture**

"Trusting Cook, Deutsch invested significant amounts of time, money, and energy into marketing Cook's device . . . ." (*Id.* ¶ 4.) At defendant Cook's request, on or about July 13, 2014, plaintiff Deutsch loaned Cook $45,000 ("the Loan") without interest for use with the Venture.[1]

---

[1] Plaintiff clarifies this $45,000 interest-free loan was in addition to investments plaintiff had already made in the Venture. (Doc. No. 1 ¶ 21.)

(*Id.* ¶ 21.) "Deutsch provided the Loan with the expectation that profits from the Venture would ultimately compensate him for the interest-free use of his money." (*Id.*) "The Loan funds were placed in a business checking account held by Precision-AWR, Inc. ('PAWR'), a California corporation formed by Cook to be the corporate form through which he ultimately would license or sell the Dialfan." (*Id.* ¶ 22.) Plaintiff contends he was "impoverished by providing the Loan on an interest-free basis" and "never received any benefit in exchange for doing so." (*Id.* ¶ 47.) Defendant Cook repaid the loan in December 2016 without interest and has not "provided any remuneration for the interest-free use of the Loan proceeds between 2014 and 2016." (*Id.* ¶ 48.)

Plaintiff alleges that defendant Cook used the interest-free loan funds to pay expenses relating to the Venture, which ultimately benefited Cook, as well as funds for his personal expenses, including payment for legal fees. (*Id.* ¶ 24.) Plaintiff also alleges that he could have profited by investing the $45,000 interest-free loan elsewhere. (*Id.* ¶ 25.) In addition to plaintiff's $45,000 interest-free loan to defendant Cook, plaintiff also alleges he contributed $60,000 to cover the Venture's expenditures, for which defendant Cook has not reimbursed him "or otherwise pa[id] for any of these expenses." (*Id.* ¶¶ 21, 29.)

Again at defendant Cook's request, plaintiff worked to "increase the Dialfan's market appeal by identifying and working with manufacturers to develop a plastic disposable Dialfan design and protypes, which Cook used to implant mesh in several of his hernia patients." (*Id.* ¶ 26.) Additionally, plaintiff worked with two companies to develop a prototype mesh that interfaced with the Dialfan. (*Id.*)

According to plaintiff, he expended "hundreds of hours marketing and generating commercial interest in the Dialfan over a four year period from 2011 to 2015" without any remuneration from defendant Cook. (*Id.* ¶¶ 27–28.) "At Cook's request and Deutsch's expense, Deutsch displayed and promoted the Dialfan at dozens of trade shows attended by physicians specializing in hernia treatments and by medical device sales and manufacturing companies . . .." (*Id.*) Plaintiff also expended efforts preparing educational materials "explaining the use of the Dialfan and worked with regulatory authorities and consultants to satisfy requirements that would allow for the commercialization of the Dialfan." (*Id.*)

3

Plaintiff contends he successfully generated interest from "at least three medical device manufacturers, including Novus Scientific, who expressed interest in licensing, producing, and selling the Dialfan." (*Id.* ¶ 30.) Plaintiff alleges defendant Cook "unreasonably failed [to contact Novus Scientific] and refused to follow up [to negotiate a license], squandering the opportunity." (*Id.*) Plaintiff further asserts that his efforts have resulted in defendant Cook receiving other inquiries from interested potential licensors. (*Id.* ¶ 31.) However, plaintiff avers that on or about June 29, 2015, defendant Cook "unreasonably failed and refused to reach agreement with any company and instead unilaterally decided not to cooperate with [plaintiff's] efforts to promote the Dialfan . . .." (*Id.* ¶ 32.) Plaintiff claims he "timely protested defendant's unwillingness to allow [plaintiff] to continue to participate in the Venture and to recoup his investment." (*Id.* ¶ 33.)

According to plaintiff, "[t]he parties thereafter spent many months and ultimately years negotiating terms under which Deutsch would be able to recoup his investment upon Cook's successful commercialization of the Dialfan." (*Id.* ¶ 34.) During the course of those negotiations, defendant "continued to provide [plaintiff] information regarding [defendant's] independent efforts in furtherance of the Venture, and to propose and entertain proposals for sharing profits on sales of the Dialfan." (*Id.* ¶ 35.) Plaintiff contends he diligently and frequently followed up with defendant regarding the Venture's status. (*Id.* ¶ 36.)

In March 2017, defendant proposed retaining a third party to continue the Venture, with plaintiff and defendant sharing in the resulting profits. (*Id.* ¶ 37.) However, according to plaintiff, defendant "failed to identify and such third party and nothing came of [defendant's] proposal." (*Id.*)

**C.  Communication Ends**

In or around September 2018, defendant "suddenly refused to communicate further with Deutsch regarding the Venture, leaving Deutsch no recourse to recover his investment and leaving Cook, who wholly owns and controls the Dialfan technology, unjustly enriched by Deutsch's participation in the Venture and the commercial interest in the Dialfan that would not have existed, but for Deutsch's efforts and investment." (*Id.* ¶ 38.) Defendant "received opportunities to commercialize the Dialfan through licensing arrangements and opportunities to

produce and sell the Dialfan to interested physicians" through plaintiff's "labor hours, money, and effort in attempting to bring the Dialfan to market." (*Id.* ¶¶ 49–50.) However, defendant "suddenly ceased all efforts to work with [plaintiff] to take the Dialfan to market, and thereafter failed and refused to deal fairly with [plaintiff]" by "arbitrarily and unfairly den[ying plaintiff] the opportunity to continue working toward recouping his investment." (*Id.* ¶ 51.)

Plaintiff asserts that the "Dialfan is a commercially-viable and valuable medical device" and contends, "[o]n information and belief, Cook routinely continues to use the Dialfan on his own surgery patients, and profits from doing so." (*Id.* ¶¶ 39, 40.) Plaintiff claims he cannot recoup any portion of his investment because of defendant Cook's unilateral decision to discontinue the Venture. (*Id.* ¶ 41.) Plaintiff argues that as a matter of equity, defendant Cook cannot be permitted to keep the benefits conferred upon him by plaintiff's efforts. (*Id.* ¶ 53.)

Based on these allegations, plaintiff brings a single claim for unjust enrichment, construed alternatively as a quasi-contract claim for restitution. (*Id.* at 7.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

5

unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that a deficient pleading can be cured by the allegation of additional facts, however, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**DISCUSSION**

Defendant moves to dismiss plaintiff's unjust enrichment claim and alternative quasi-contract for restitution claim for the following reasons: (1) unjust enrichment cannot serve as an independent cause of action; (2) plaintiff has not sufficiently alleged that he conferred any benefits on defendant that defendant retained; and (3) restitution is not available where the parties had the opportunity to contract with one another but neglected to do so. (*See* Doc. No. 13-1 at 6.) For the reasons explained below, the court will grant defendant's motion to dismiss with leave to amend.

**A.    Unjust Enrichment**

      1.    <u>Unjust Enrichment as a Standalone Claim</u>

Defendant moves to dismiss plaintiff's complaint because "[t]he weight of authority in California—beginning with several Court of Appeal decisions—holds that unjust enrichment is not an independent cause of action." (Doc. No. 13-1 at 7.) All the California court decisions cited by defendant in support of this argument were issued before the Ninth Circuit's decisions in *Astiana v. Hain Celestial Grp.*, Inc., 783 F.3d 753, 762 (9th Cir. 2015), and *Bruton v. Gerber*

*Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017).[2]  (*See id.*)  In opposition to the pending motion, plaintiff states that while "California courts are split on the question whether unjust enrichment, standing alone, is a recognized cause of action in California," plaintiff's claim may proceed as a quasi-contract claim for restitution.  (Doc. No. 16 at 5–7) (citing *Wong v. Tomaszewski*, No. 2:18-cv-00039-MCE, 2019 WL 1979252, *3 n.4 (E.D. Cal. May 3, 2019) (noting a split authority regarding viability of unjust enrichment claims under California law); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("While California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract.") (citing *Astiana*, 783 F.3d at 762).  Plaintiff concedes there is no contract between himself and defendant, and thus plaintiff has no adequate remedy at law.  (*Id.* ¶ 54.)

In 2017, the Ninth Circuit clarified the long-standing inconsistency in California law, recognizing that independent claims for unjust enrichment may proceed.  *See Bruton*, 703 F. App'x at 470; *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018) (noting that the Ninth Circuit clarified that unjust enrichment claims can proceed, but holding plaintiffs failed to satisfy Rule 9(b)'s heightened pleading requirements) (citing *Bruton*, 703 F. App'x at 470); *DeArmey v. Hawaiian Isles Kona Coffee Co.*, No. 8:19-cv-00432-JVS-KES, 2019 WL 6723413, *6 (C.D. Cal. July 22, 2019) (holding that plaintiff's unjust enrichment claim may proceed); *see also Astiana*, 783 F.3d at 762 (upholding plaintiff's unjust enrichment consumer claim as distinct from unfair competition, false advertising, and fraud claims); *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015) (allowing independent claim for unjust enrichment to proceed in an insurance dispute); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54 (1996) (recognizing independent cause of action for unjust enrichment relating to a real estate transaction).  Therefore, the court rejects defendant's argument that unjust enrichment is not a viable claim as a matter of law.

/////

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

7

### 2. Plaintiff's Unjust Enrichment Claim and Quasi-Contract Claim for Restitution

#### a. *Unjust Enrichment*

An unjust enrichment claim requires the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). To state a claim, a plaintiff must affirmatively allege that the defendant received a benefit at plaintiff's expense. *See AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003); *Williams*, 384 F. Supp. 3d at 1057. "The term 'benefit' 'denotes any form of advantage.'" *Ghirardo*, 14 Cal. 4th at 51. "Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Id.* (holding that an unjust enrichment claim allowed property sellers to recoup a sum they paid on underlying promissory note but inadvertently undercalculated amount owed by buyers).

Thus, in *ESG Capital Partners*, the Ninth Circuit held that the plaintiff's complaint was sufficient in alleging that defendants received and unjustly retained $350,000 at plaintiff's expense where: (1) defendants received nearly $3 million from plaintiff; (2) defendants promised to hold the deposit in a client trust account; (3) defendants promised the funds would be refundable; (4) defendants actually placed those funds in a client trust account; and (5) defendants paid themselves $350,000 with those funds. *ESG Capital Partners*, 828 F.3d at 1039 (holding plaintiff sufficiently stated alternative claim under quasi-contract for same reasons as unjust enrichment theory).

Here, plaintiff claims defendant Cook received the following benefits and savings: (1) the interest-free loan from plaintiff, which has since been repaid without interest, for use toward the Venture, the Dialfan's patent, and/or paying defendant's legal fees[3]; (2) plaintiff contributed an additional $60,000 of his own funds to pay for the Venture's expenses, for which has not been reimbursed by defendant; (3) plaintiff worked with manufacturers to design and develop

---

[3] It is unclear from the complaint whether plaintiff is alleging that his interest-free loan to defendant that was used to pay for attorney's fees associated with the Dialfan's patent is distinct from his allegation that defendant Cook used the interest-free loan to pay his personal legal fees. (*See* Doc. No. 1 ¶¶ 4, 24.) In any event, resolution of the pending motion to dismiss does not require the court to address whether plaintiff could be entitled to interest on an interest-free loan that has since been repaid.

prototypes for the Dialfan; (4) plaintiff worked with two companies to develop prototypes that interfaced with the Dialfan; (5) plaintiff developed educational materials explaining the Dialfan's use, which defendant could use to market the Dialfan; (6) plaintiff marketed the Dialfan at dozens of trade shows; (7) plaintiff successfully generated the medical device industry's interest in the Dialfan; (8) plaintiff met with consultants and regulatory officials in an effort to properly license the Dialfan, resulting in defendant's increased position to market the Dialfan and have relationships with industry members; (9) plaintiff devoted hundreds of hours marketing the Dialfan; (10) defendant saved time, effort, and money by not paying plaintiff for his services, the value of which exceeds $75,000; and (11) defendant uses the Dialfan on his surgery patients and profits as a result. (Doc. No. 1 ¶¶ 26–29, 40, 44–52; Doc. No. 16 at 8–9.) In opposing the pending motion to dismiss, plaintiff argues that "[a]s the sole owner of the intellectual property associated with the Dialfan, [defendant] benefited from [plaintiff's] efforts in developing a market and interest in the Dialfan, whether or not [defendant] proved capable of capitalizing on such interest." (Doc. 16 at 8.) While not explicitly pled in his complaint, plaintiff suggests in his opposition that defendant now retains a competitive advantage, where he "now knows which tactics worked well, and which were less productive in generating commercial interest in the Dialfan" through plaintiff's efforts. (*Id.*)

In contrast, defendant argues that an unjust enrichment claim is not cognizable where he merely decided not to license the Dialfan and has not earned any profits from it. (Doc. No. 13-1 at 9–10.) Therefore, defendant argues, plaintiff is seeking a windfall because he is requesting more than what the purported agreement with defendant entitles him to. (*Id.*) Defendant relies upon the decision in *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008), for the proposition that "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefore." However, the undersigned finds the *Peterson* decision to be inapplicable here because in that case the court held only that the plaintiffs' unjust enrichment claim was premised upon the California Insurance Code, which provided a separate recovery for violations of the code. *Id.* at 1593–95.

/////

Defendant also argues that plaintiff Deutsch acted in his own self-interest to receive 49% of profits, which prohibits him from obtaining restitutionary relief. (Doc. No. 17 at 4) (citing *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989) ("A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not entitled to contribution")). However, *White* is also distinguishable from the present case in that it involved a local government conditioning its approval for a landowner to construct a public thoroughfare on the landowner's property on construction of a similar thoroughfare for a neighbor's landlocked property. *White*, 216 Cal. App. 3d at 1312–13. The California Court of Appeal specifically noted that its decision in that case was "limited to the peculiar situation presented." *Id.* While the plaintiff's construction project in *White* would ultimately benefit the neighbor's property, the court in that case highlighted that the *government* conditioned its approval on improvement of defendant's property, but that the defendants had not directly requested the construction from plaintiff. *Id.* at 1316. Here, however, plaintiff's complaint alleges that defendant Cook made numerous requests of plaintiff Deutsch.

While according to the allegations of the complaint defendant has not capitalized from licensing the Dialfan, plaintiff does allege that defendant "routinely continues to use the Dialfan on his own surgery patients, and profits from doing so." (Doc. No. 1 ¶¶ 26, 40.) Somewhat similar to the allegations in *ESG Partners*, 828 F.3d at 1039, here plaintiff alleges that defendant Cook received a $45,000 interest-free loan from plaintiff for the Venture; the loan funds were placed into the PAWR account; and defendant used some of the $45,000 loan to pay his personal expenses. (*Id.* ¶¶ 4, 21–24, 45–50.) Plaintiff also alleges that he incurred $60,000 in expenses in addition to spending significant time and energy marketing the Dialfan, cultivating industry contacts, and preparing the Dialfan for commercialization. (*Id.* ¶¶ 26–30.) However, unlike the allegations of the complaint found to be sufficient in *ESG Partners*, where the defendants allegedly promised plaintiff funds held in a trust account were refundable but nonetheless misappropriated those funds, here plaintiff does not allege how plaintiff expected to be reimbursed should the Venture not proceed or in what way funds loaned were unjustly retained by defendant Cook. (*See generally* Doc. No. 1.) At the hearing on the pending motion, plaintiff's

counsel suggested that plaintiff can allege additional facts concerning his expectations in this regard and the basis therefore.

Accordingly, the court will dismiss plaintiff's unjust enrichment claim with leave to amend. Any amended complaint plaintiff elects to file must allege facts clarifying plaintiff's expectations regarding reimbursement for costs and defendant's assurances, if any, regarding defendant's willingness to proceed with licensing the Dialfan and plaintiff having the opportunity to recoup his costs.

          b.     *Quasi-contract Claim for Restitution*

Alternatively, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana*, 783 F.3d at 762 (finding plaintiff's allegation that she was entitled to relief because defendant "entic[ed]" plaintiffs to purchase their products through "false and misleading" labeling, and that defendant was "unjustly enriched" as a result to be sufficient) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Courts can "construe the cause of action as a quasi-contract claim seeking restitution" to avoid an unjust benefit conferred to the defendant "through mistake, fraud, coercion, or *request*." *Astiana*, 783 F.3d at 762 (quoting 55 Cal. Jur. 3d Restitution § 2) (emphasis added).

Here, plaintiff alleges that he provided the $45,000 interest-free loan to defendant Cook on or about July 13, 2014, at Cook's request. (*Id.* ¶¶ 21, 45.) Plaintiff further alleges that defendant Cook requested that plaintiff work to "increase the Dialfan's market appeal by identifying and working with manufacturers to develop a plastic disposable Dialfan design and prototypes, which Cook used to implant mesh in several of his hernia patients." (*Id.* ¶ 26.) "At Cook's request and Deutsch's expense, Deutsch displayed and promoted the Dialfan at dozens of trade shows attended by physicians specializing in hernia treatments and by medical device sales and manufacturing companies . . .." (*Id.* ¶¶ 27–28.) Plaintiff also contends that defendant "personally benefitted from the interest-free Loan because he used Loan funds for expenses unrelated to the Venture's objective of promoting the Dialfan." (*Id.* ¶ 46.) Therefore, plaintiff's allegations that defendant "requested and received benefits at [plaintiff's] expense including, but

11

not limited to, the interest-free Loan used for PAWR's expenses, as well as labor hours, money, and effort expended to market the Dialfan" (Doc. No. 1 ¶ 45) sufficiently demonstrate plaintiff acted in response to defendant's requests. *See Astiana*, 783 F.3d at 762.

Even when one has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Ghirardo*, 14 Cal. 4th at 51. A "party who does not know about another's mistake, and has no reason to suspect it, may not be required to give up the benefit if he also relied on it to his detriment." *Id.* In other words, "innocent recipients may be treated differently than those persons who acquire a benefit with knowledge." *Id.* at 52. The court may infer from the allegations of the complaint, if proven, that this is not a case where the defendant was blind to plaintiff's efforts given plaintiff's numerous allegations regarding defendant's requests.

For reasons discussed in subsection (a), however, the court concludes that the complaint does lack sufficient allegations regarding plaintiff's expectations for reimbursement, the basis for those expectations, and any assurances from defendant to proceed with attempting to license the Dialfan. Accordingly, plaintiff's alternative quasi-contract claim for restitution will also be dismissed with leave to amend.

    3.    In *quantum meruit*

In opposing the pending motion to dismiss plaintiff relies upon the decision in *Earhart v. William Low Co.*, 25 Cal. 3d 503, 511, 515 n.5 (1979), an action in *quantum meruit*, for the propositions that "performance of services at another's behest may itself constitute [a] 'benefit' . . . ." and "it is enough that the plaintiff has rendered the very performance for which the defendant bargained. Service or forbearance rendered at the defendant's request is regarded as having been received by him." (Doc. No. 16 at 8) (citing *Earhart*, 25 Cal. 3d at 511, 515 n.5) (noting "relaxed . . . judicial definition of 'benefit' in order to grant recovery to a party who had justifiably relied on another's request for performance" where the defendant contracted with an architect to create resort plans, the architect complied with the defendant's requests, and the defendant nonetheless
/////

abandoned the project) (citing *Bodmer v. Turnage*, 105 Cal. App. 2d 475, 475–78 (1951)).[4]

The decisions in *Earhart* and *Bodmer* both address situations involving written contracts. *See Earhart*, 25 Cal. 3d at 506 ("[t]hese negotiations culminated in a construction contract which was to become binding when defendant obtained the requisite financing," though defendant never received financing); *Bodmer*, 105 Cal. App. 2d at 475 ("[defendant] entered into a written contract with the plaintiff"). As such, their applicability here–where there was no contract–is subject to question.

Additionally, *Bodmer* was an action brought in *quantum meruit*, and the claims in *Earhart* included elements of both *quantum meruit* and unjust enrichment.[5] *See Earhart*, 25 Cal. 3d at 505, 510–11; *Bodmer*, 105 Cal. App. 2d at 476–77. Here, plaintiff has not squarely alleged an action in *quantum meruit*. (*See generally* Doc. No. 1.) Nonetheless, the essence of plaintiff's allegations appear to sound in *quantum meruit*. *See Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19-cv-02417-LHK, 2020 WL 887833, *3 (N.D. Cal. Feb. 24, 2020) (noting that the elements of *quantum meruit* are: "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid.") (citation omitted). However, the complaint before the court lacks allegations that plaintiff reasonably expected reimbursement for his expenditures and efforts should the project cease to proceed. For these reasons, plaintiff will also be granted leave to amend his complaint to specify any claim in *quantum meruit* and allege facts in support of such a claim consistent with Federal Rule of Civil Procedure 11. *See Cook*, 911 F.2d at 247 (holding court may afford plaintiff with leave to amend if pleadings can be cured by allegation of additional facts).

/////

---

[4] Plaintiff's counsel raised the decision in *Bodmer* at the hearing on the pending motion to dismiss, though plaintiff did not discuss the case or specifically reference *quantum meruit* in the opposition to the motion.

[5] "Although the paths of *quantum meruit* and unjust enrichment have, for at least a century, diverged, they do share a common ancestry. Some discussions, indeed, still use the terms interchangeably. Some carefully distinguish them . . .. It is a field fraught with hidden pitfalls." *Alts. Unlimited, Inc. v. Bd. of Sch. Comm'rs*, 155 Md. App. 415, 469–70 (2004).

####  4. Third Restatement on Restitution and Unjust Enrichment

Defendant argues that the parties "declined to enter into a contract," thus precluding relief under the Third Restatement on Restitution and Unjust Enrichment § 2, comment (d) (2011). (Doc. No. 17 at 5–6). Section 2, comment (d), provides:

> The limitation of § 2(3) is traditionally expressed by denying restitution to a claimant characterized as "officious," an "intermeddler," or a "volunteer." . . . . Because contract is strongly preferred over restitution as a basis for private obligations (see Comment c), restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.

Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. d (2011). Defendant acknowledges that "no California authority has explicitly adopted this provision in the Third Restatement." (*Id.*)

First, viewing the pleadings in a light most favorable to the nonmoving party, plaintiff does not allege that the parties *declined* to enter into a contract. (*See generally* Doc. No. 1.) Instead, plaintiff alleges "the parties never reached or entered a formal agreement," the parties "never entered a partnership agreement, joint venture agreement, or any other contract governing their efforts to bring the Dialfan to market . . . .," and "[a]t the time the parties began the Venture, they did not agree upon a termination date nor did they set performance metrics or deadlines for achieving sales goals." (Doc. No. 1 ¶¶ 3, 19, 20.) However, the allegations of the complaint cannot be plausibly read to mean the parties affirmatively "declined to enter into a contract," as defendant now suggests. (Doc. No. 17 at 5–6.)

In any event, the court is not persuaded by the comment to the Restatement's application to this case. Taking the allegations in a light most favorable to plaintiff, as the court must on a motion to dismiss, plaintiff does not appear to have offered himself up as a volunteer (i.e., as an "officious intermeddler"). Instead, plaintiff alleges that defendant Cook requested that he take certain actions to advance the Venture, which also allegedly benefited himself, and plaintiff complied with those requests. (*See* Doc. No. 1 ¶¶ 21–22, 24, 26–32, 40, 44–52.) While contract is strongly preferred over restitution (Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. d), the traditional limitation espoused by this Restatement comment relating to an

"officious" claimant does not appear to be implicated under the facts alleged in plaintiff's complaint. Accordingly, the court rejects defendant's argument in this regard.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the complaint (Doc. No. 13) is granted with leave to amend. Plaintiff will be provided thirty (30) days from the date of this order to file an amended complaint which complies with this order or to file a notice with the court indicating that he will not amend.

IT IS SO ORDERED.

Dated: **February 27, 2020**

UNITED STATES DISTRICT JUDGE