UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEUTSCH,<br><br>        Plaintiff,<br><br>v.<br><br>DOUGLAS W. COOK,<br><br>        Defendant. | No. 1:19-cv-00281-ADA-SAB<br><br>PRETRIAL ORDER<br><br>Deadlines:<br><br>Motions *in Limine* Filing: **September 12, 2023**<br>Oppositions: **September 19, 2023**<br><br>Trial Submissions (misc.): **September 12, 2023**<br><br>Bench Trial: **October 3, 2023, at 8:30 a.m.**<br>Court Room 1 (**3 days**); bench trial; in person |

On June 12, 2023, the Court conducted a pretrial conference. Patrick J. Murphy appeared as counsel for Plaintiff; Todd A. Wynkoop appeared as counsel for Defendant. Having considered the Parties' joint pretrial statement and the views of the Parties, the Court issues this tentative pretrial order. If no objections are filed pursuant to the timelines iterated in this pretrial order, it shall become final without further order of the Court.

Plaintiff Michael Deutsch ("Plaintiff") brings this equitable action against Defendant Douglas W. Cook ("Defendant") for restitution and *quantum meruit* due to a soured business venture between the Parties. This action proceeds on Plaintiff's first amended complaint, (ECF No. 26), alleging that Plaintiff devoted time, energy, and money to the venture and the Defendant

1

failed to compensate Plaintiff for his efforts. This matter is set for a bench trial on October 3, 2023.

I.      JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. § 1332. Jurisdiction is not contested. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). Venue is not contested.

II.      JURY

Because Plaintiff's claims against Defendant are in equity, the case will be tried by the Court in a bench trial.

III.      UNDISPUTED FACTS

Based on the Parties' joint pretrial statement, the following facts are undisputed:

1. Defendant, a surgeon, invented the Dialfan and used it in hernia repair surgery on his patients.

2. The Dialfan consists of (1) a mesh patch and (2) a placement tool with a plurality of adjustable blades and a control to move the adjustable blades between a clustered position that allows the blades to be inserted in an opening in a ply of the mesh patch and an expanded position to spread the mesh patch out in a planar fashion.

3. In 2009, Defendant and Plaintiff agreed that Plaintiff, an entrepreneur who markets and sells a medical device used in hernia repair surgery, would travel to California to discuss and see a demonstration of the Dialfan.

4. The Parties verbally agreed to collaborate and execute a mutually agreeable contract regarding their efforts to commercialize the Dialfan.

5. Among other scenarios, they discussed Plaintiff receiving a 49% interest in a venture that commercialized the Dialfan.

6. The Parties always agreed to share the risk of the venture on the same basis as the rewards.

7. The Parties never entered into a formal agreement related to any venture to commercialize the Dialfan.

8. Plaintiff provided Defendant's business, Prevision-AWR, Inc., $45,000 on an interest-free basis for use in connection with commercializing the Dialfan.

9. In 2016, Defendant repaid the amount of $45,000 in full.

10. The Parties did not agree on a termination date for the attempt to market the Dialfan and no performance metrics or deadlines for achieving sales goals were set.

11. In or about June 2015, the joint effort to commercialize the Dialfan concluded.

12. Defendant remains the holder of all patents associated with the Dialfan and is the only person who can lawfully sell or license the Dialfan.

13. Neither Plaintiff nor Defendant received any revenue in any form from the proposed commercialization of Dialfan.

14. Aside from repayment of the $45,000, Plaintiff did not receive any other funds from Defendant.

15. The Dialfan is a commercially viable medical device, but has not achieved any commercial success.

IV. DISPUTED FACTUAL ISSUES

1. Whether Defendant approached Plaintiff seeking assistance to commercialize the Dialfan; whether Defendant wanted Plaintiff to use his connections and experience to market or license the Dialfan; and whether Defendant also wanted Plaintiff to contribute money to promote the Dialfan's commercialization.

2. Whether the Parties were introduced by a mutually known third-party who had knowledge of the Dialfan and Plaintiff's interest in marketing and commercializing medical devices.

3. Whether Plaintiff was interested in participating in the commercialization of the Dialfan for Plaintiff's own financial benefit with Defendant.

4. Whether the Parties entered a venture they referred to as a "partnership," under which Defendant promised that Plaintiff would receive 49% of the profits of commercialization of the Dialfan.

5. Whether the Parties discussed various structures for them to mutually commercialize the Dialfan, including a "partnership" and a "joint venture," but despite Defendant signing documents, Plaintiff refused to sign the documents, or the parties never agreed to any terms

3

of any relationship.

6. Whether, aside from offering Defendant a 49% interest in a commercial venture to develop the Dialfan, Defendant never promised Plaintiff any compensation or profits from the Dialfan's commercialization.

7. Whether Plaintiff paid money toward attorneys' fees for the Dialfan's patent.

8. Whether Defendant has no knowledge of Plaintiff's alleged expenses because Plaintiff never shared information with Defendant of Plaintiff's alleged expenses related to the Dialfan.

9. Whether Defendant personally benefitted from contributions made by Plaintiff to the Dialfan commercialization efforts, which to this date, has not realized any commercial success.

10. Whether Plaintiff's efforts to commercialize the Dialfan were made at Defendant's request and Plaintiff's expense.

11. Whether, to the extent Plaintiff made any efforts or incurred any expense, he did so of his own volition, at his own risk, and in his own financial self-interest.

12. Whether Plaintiff spent $60,000 to commercialize the Dialfan between 2011 and 2015.

13. Whether Defendant has no knowledge of Plaintiff's alleged expenses because Plaintiff never shared information with Defendant of Plaintiff's alleged expenses related to the Dialfan.

14. Whether Plaintiff also invested hundreds of hours of his time, at a value substantially in excess of $90,000, generating interest in the Dialfan.

15. Whether Defendant has no knowledge of Plaintiff's alleged expenditure of time because Plaintiff never shared information with Defendant of Plaintiff's alleged time related to the Dialfan.

16. Whether Plaintiff provided each of the following services: (1) working with manufacturers and other companies to develop prototypes for the Dialfan, (2) displaying and promoting the Dialfan at dozens of trade shows, (3) preparing materials explaining the use of the Dialfan, and (4) working with regulatory authorities and consultants to obtain approval to

1  manufacture, sell and use the Dialfan.

2      17.    Whether Defendant has no knowledge of Plaintiff's efforts because Plaintiff never shared information with Defendant of Plaintiff's efforts related to the Dialfan.

    18.    Whether, at Defendant's urging, Plaintiff worked to increase the Dialfan's market appeal by identifying and working with manufacturers to develop a plastic disposable Dialfan design and prototypes, which Defendant used to implant mesh in several of his hernia patients.

    19.    Whether Defendant ever urged Plaintiff to take any of the contended actions and, to the extent Plaintiff took any of the contended actions, Plaintiff did so of Plaintiff's own volition and in Plaintiff's best interest.

    20.    Whether Plaintiff's efforts were successful in generating interest for the Dialfan, including from three medical device manufacturers.

    21.    Whether one of these manufacturers, Novus Scientific, expressed interest in licensing, producing, and selling the device.

    22.    Whether Novus Scientific did anything more than express a general interest in the Dialfan and to the extent any discussions occurred, they never progressed beyond a very general interest.

    23.    Whether Defendant, the inventor and would-be licensor of the Dialfan, failed to follow up on that opportunity, thereby squandering it.

    24.    Whether Plaintiff contributed money and performed services to commercialize the Dialfan because Defendant represented Plaintiff would be compensated for doing so, whether by a commission on sales of the Dialfan, by a share of royalties earned in licensing the Dialfan to medical supply companies, or otherwise.

    25.    Whether Defendant specifically represented and agreed that the "partnership" between Plaintiff and Defendant to commercialize the Dialfan would continue at least until Plaintiff had recouped the value of the time and money Plaintiff invested in the venture.

    26.    Whether Defendant only offered Plaintiff a 49% interest in commercialization of the Dialfan, which Plaintiff refused.

    27.    Whether Defendant never advised Plaintiff that he might suddenly decide to end the

1  venture, leaving Plaintiff to bear 100% of the losses associated with it.

2  28.    Whether Defendant ever represented to Plaintiff that Defendant would compensate
3  Plaintiff in any way if no rewards occurred.

4  29.    Since parties agreed to share the risks of the venture on the same basis as the
5  rewards, whether Plaintiff expected that Defendant would compensate him in some form or manner
6  (e.g., granting Plaintiff a royalty-free license to sell the Dialfan) for his efforts and the expenses he
7  incurred in the furtherance of the venture if the venture proved less profitable than the parties hoped.

8  30.    Whether Plaintiff's expectation that Defendant would compensate Plaintiff if the
9  Dialfan generated no profits was unreasonable.

10  31.    Whether Plaintiff communicated to Defendant and Defendant understood that
11  Plaintiff never was willing to donate his time and money to the Dialfan without later recouping it.

12  32.    Whether in or about June 2015, Defendant unilaterally cut Plaintiff out of any efforts
13  to market the Dialfan, intending to proceed with commercialization on his own.

14  33.    Whether Defendant refused Plaintiff's offers to continue to promote the device or
15  whether Plaintiff represented to Defendant that Plaintiff was ceasing his efforts to market and
16  commercialize the Dialfan and refused to continue efforts to promote the Dialfan as the Parties had
17  agreed.

18  34.    Whether Defendant thereafter continued to independently attempt to commercialize
19  the Dialfan, and for years after June 19, 2015, Defendant continued to provide Plaintiff information
20  regarding Defendant's independent efforts.

21  35.    Whether Defendant provided Plaintiff this information in the course of extended
22  negotiations between the Parties for Plaintiff to receive some compensation for his efforts, and to
23  at least allow Plaintiff to recoup his expenditures; however, no agreement was reached.

24  36.    Defendant admits the Parties spend years trying to resolve this dispute but denies
25  that the efforts ever were intended to provide Plaintiff compensation or a means for Plaintiff to
26  recoup his expenditures.

27  37.    Whether the failed negotiations and this lawsuit are Plaintiff's efforts to avoid the
28  consequences of the downside risk of the Parties' agreement and to shift that risk to Defendant.

38. Whether in March 2017, Defendant proposed retaining a third party to continue the venture, with Defendant and Plaintiff sharing in the profits resulting therefrom. But, Defendant ultimately could not locate a suitable third party and nothing came of the proposal.

39. Whether, at his own cost and expense, Defendant retained Stephen Song, Managing Partner of md3 medevice to attempt to commercialize the Dialfan.

40. Whether Defendant benefitted from Plaintiff's contributions of money and time commercializing the Dialfan, including in learning which markets to target.

41. Whether, acknowledging his earlier representations that Plaintiff would be compensated, Defendant proposed and negotiated for years terms under which Plaintiff would receive a license to sell the Dialfan to earn revenue to offset his losses, but the Parties failed to reach an agreement.

V. DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The Parties have not yet filed motions *in limine*. The Court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the Court prior to trial and without reference to the other evidence which will be introduced by the Parties at trial. The Parties do not anticipate any disputed evidentiary issues. Nevertheless, any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial [September 12, 2023]**. Oppositions shall be filed no later than **14 days before trial [September 19, 2023]**. Upon receipt of any opposition briefs, the Court will notify the Parties if it will hear argument on any motions *in limine* prior to the first day of trial. As such, Parties shall **not** file any reply briefs without Court approval. The Parties are reminded they may still object to the introduction of evidence during trial.

VI. SPECIAL FACTUAL INFORMATION

The required special factual information, pursuant to Local Rule 281(b)(6)(iii), is specified by the Parties within the disputed and undisputed facts sections above.

VII. RELIEF SOUGHT

Plaintiff seeks payment in the amount of $150,000 as the reasonable value of the benefit Defendant received at Plaintiff's expense.

7

VIII. POINTS OF LAW

All of Plaintiff's claims are brought against Defendant, Douglas W. Cook.

A. Plaintiff

1. Restitution.

The elements Plaintiff must prove as to restitution are (a) Defendant received a benefit and (b) Defendant unjustly retained the benefit at Plaintiff's expense. *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017).

2. *Quantum Meruit*.

The elements Plaintiff must prove as to quantum meruit are (a) Plaintiff performed certain services for Defendant, (2) the value of the services, (3) that they were rendered at Defendant's request, and (4) that Defendant did not pay for them. *Sharp Mem'l Hosp. v. Regence BlueCross BlueShield of Utah*, No. 16CV2493 JM (RNB), 2018 WL 3993359, at *9 (S.D. Cal. Aug. 21, 2018).

B. Defendant

Defendant denies that Plaintiff can prove the allegations in his complaint as required by law.

IX. ABANDONED ISSUES

Plaintiff has not abandoned any issues.

X. WITNESSES

Plaintiff's witnesses shall be those listed in **Attachment A**. Defendant's witnesses shall be those in **Attachment B**. Each party may call any witnesses designated by the other. **Parties shall submit their witness list to Mamie Hernandez, Courtroom Deputy, no later than September 28, 2023**.

1. **The Court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

    a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

    b. The witness was discovered after the pretrial conference and the proffering

8

       party makes the showing required in paragraph 2, below.

2.  Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the Court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

  a.  The witness could not reasonably have been discovered prior to the discovery cutoff;

  b.  The Court and opposing parties were promptly notified upon discovery of the witness;

  c.  If time permitted, the party proffered the witness for deposition; and

  d.  If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

## XI.  EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiff's exhibits are listed in **Attachment C**. Defendant's exhibits are listed in **Attachment D**. The Parties have not submitted Joint Exhibits. No exhibit shall be marked with or entered into evidence under multiple exhibit numbers. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2. Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). Defendant's exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 100 (e.g., DX-100, DX-101, etc.). Plaintiff's exhibits shall be listed numerically, and Defendant's exhibits shall be listed alphabetically. Exhibits that are multiple pages shall be marked with page numbers in addition to the prefix and exhibit number, on each page of the exhibit (e.g., PX-100, page 1 of 2, PX-100, page 2 of 2, etc.). **The Parties shall submit these exhibits to Mamie Hernandez, Courtroom Deputy, no later than September 28, 2023**.

The Parties must prepare three (3) separate exhibit binders for use by the Court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall

have an identification label on the front and spine.  The Parties must exchange exhibits no later than **28 days before trial [September 5, 2023]**.  Any objections to exhibits are due no later than **14 days before trial [September 19, 2023]**.  This includes any demonstrative evidence the Parties intend to use.  In making any objection, the party is to set forth the grounds for the objection.  As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation.

> **The Court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria**:

A. The Court will not admit exhibits other than those identified on the exhibit lists referenced above unless:
  1. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or
  2. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

B. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the Court may consider their admissibility at trial.  The exhibits will not be received unless the proffering party demonstrates:
  1. The exhibits could not reasonably have been discovered earlier;
  2. The Court and the opposing parties were promptly informed of their existence;
  3. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

XII. <u>DISCOVERY DOCUMENTS</u>

Parties have stated that no party expects to offer any discovery documents at trial.

Nevertheless, if counsel intends to offer any discovery documents, counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial [September 19, 2023]**.

## XIII. FURTHER DISCOVERY OR MOTIONS

The Parties do not presently anticipate any requests for further discovery or additional pretrial motions.

## XIV. STIPULATIONS

The Parties do not propose any stipulations.

## XV. AMENDMENTS/DISMISSALS

The Parties do not request to amend any pleadings.

## XVI. SETTLEMENT

The Parties have attempted to negotiate settlement for years but have reached impasse.

## XVII. JOINT STATEMENT OF THE CASE

The Parties agree that it is not advisable to present any part of this action upon an Agreed Statement of Facts.

Since this is a bench trial, presentation of an agreed statement of facts is not necessary.

## XVIII. SEPARATE TRIAL OF ISSUES

The Parties agree that no separate trial of any issue is necessary or advisable.

## XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

## XX. ATTORNEYS' FEES

No attorneys' fees are sought in this action.

## XXI. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

None.

## XXII. MISCELLANEOUS

None.

## XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

A bench trial is set for **October 3, at 8:30 a.m. in Courtroom 1** before the Honorable Judge

Ana de Alba. Trial is anticipated to last **3 court days**. The parties are directed to Judge de Alba's standard procedures available on her webpage on the Court's website. Counsel are directed to call Mamie Hernandez, Courtroom Deputy, at (559) 499-5652, one week prior to trial to ascertain the status of the trial date.

## XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

Because this is a bench trial, jury *voir dire* and jury instructions are not necessary.

## XXV. TRIAL BRIEFS

As noted above, trial briefs are due **7 days before trial [September 26, 2023]**.

## XXVI. OBJECTIONS TO PRETRIAL ORDER

Written objections to the pretrial order, if any, must be filed within **10 days** from the date of service of this order. Such objections shall specify the requested modifications, corrections, additions, or deletions. If no objections are filed, the order will become final without further order of this Court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this Court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

IT IS SO ORDERED.

Dated:    June 30, 2023

UNITED STATES DISTRICT JUDGE

## ATTACHMENT A – PLAINTIFF'S WITNESSES

1. Michael Deutsch is the Plaintiff in this matter.
2. Douglas Cook is the Defendant in this matter.

## ATTACHMENT B – DEFENDANT'S WITNESSES

1. Michael Deutsch is the Plaintiff in this matter.
2. Douglas Cook is the Defendant in this matter.

ATTACHMENT C – PLAINTIFF'S EXHIBITS

1. DEUTSCH_000001-3
2. DEUTSCH_000004
3. DEUTSCH_000005
4. DEUTSCH_000006-7
5. DEUTSCH_000008-17
6. DEUTSCH_000018
7. DEUTSCH_000019-20
8. DEUTSCH_000021-22
9. DEUTSCH_000023-24
10. DEUTSCH_000025
11. DEUTSCH_000026-33
12. DEUTSCH_000034-40
13. DEUTSCH_000041-42
14. DEUTSCH_000043-47
15. DEUTSCH_000048-71
16. DEUTSCH_000072-73
17. DEUTSCH_000074-75
18. DEUTSCH_000076-92
19. DEUTSCH_000093-96
20. DEUTSCH_000097
21. DEUTSCH_000098-104
22. DEUTSCH_000105-107
23. DEUTSCH_000108-110
24. DEUTSCH_000111-112
25. DEUTSCH_000113-115
26. DEUTSCH_000116-117
27. DEUTSCH_000120-121

1    28. DEUTSCH_000122
2    29. DEUTSCH_000129-130
3    30. DEUTSCH_000122
4    31. DEUTSCH_000123-125
5    32. DEUTSCH_000126-128
6    33. DEUTSCH_000131-135

ATTACHMENT D – DEFENDANT'S EXHIBITS

1. COOK 000001-000002
2. COOK 000003-000006
3. COOK 000007-000012
4. COOK 000013-000016
5. COOK 000017-000038
6. COOK 000039-000040